# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORIGA

| | |
|---|---|
| **Christina Parker**, Sugar Hill, Georgia <br><br> Plaintiff <br><br> v. <br><br> **PNC FINANCIAL SERVICES GROUP, INC.**; <br><br> Defendants | Civil Action No: <br><br> **JURY TRIAL DEMAND** |

## COMPLAINT

Comes Now, Plaintiff, Christina Parker, by and through undersigned counsel, and files her Complaint against the above-named Defendant on the following grounds:

1

## INTRODUCTION

1.

This is an action for gender discrimination and retaliation pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## JURISDICTION

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2)

3.

PNC is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

4.

This Court has personal jurisdiction over Defendant, The PNC Financial Services Group, Inc. (hereinafter "PNC"). PNC is a for-profit corporation. At all times relevant, PNC operated its banking and financial service business within the State of Georgia, including but not limited to its location at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

## VENUE

5.

PNC operates its business within the Northern District of Georgia. All operative actions by PNC alleged herein occurred within the Northern District of Georgia. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## PARTIES

6.

The Plaintiff is a female residing in Gwinnett County.

7.

PNC is a for-profit corporation doing business in the Northern District of the State of Georgia and is subject to the jurisdiction of this Court. PNC may be served with summons and process by service upon its Chairman, President, and CEO, William Demchak, at 300 Fifth Avenue, The Tower at PNC Plaza, Pittsburgh, PA 15222.

## STATEMENT OF FACTS

8.

PNC operates a branch located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

9.

PNC performs operation decision-making for its operations located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

10.

PNC performs, provides, and participates in human resource, employee training, and management decision-making for its operations located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

11.

PNC provides employee benefits and policies and procedures for its operations located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

12.

PNC has financial control and interests over its operations located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

13.

PNC has interrelated operations, centralized control of labor, common management, and maintain common ownership and/or financial control for its operations located at 9570 Medlock Bridge Road, Duluth, Georgia 30097.

14.

PNC employed Plaintiff Christina Parker (hereinafter "Plaintiff") from October 20, 2014, until May 25, 2019. See Exhibit C, State of Georgia Department of Labor Separation Notice.

15.

For the times relevant to this complaint, Plaintiff's supervisor at the 9570 Medlock Bridge Road, Duluth, Georgia 30097 location was Mr. Stevenson Jones (hereinafter "Manager Jones").

16.

Manager. Jones's office is located at 620 Fontaine Road S.W., Mableton, Georgia 30126

17.

PNC has approximately 51,918 employees, and at the time of Plaintiff's employment, Manager Jones supervised approximately 12 employees.

18.

Plaintiff began working for PNC as a Universal Branch Consultant.

19.

Due to her success in her role, PNC promoted Plaintiff to the Interim Branch Manager.

20.

Plaintiff continued to thrive in this role, and her supervisors encouraged her to apply for the Business Development Officer (hereinafter "BDO") position.

21.

On September 24, 2015, PNC promoted Plaintiff to the BDO position. See Exhibit D, Memorandum re: promoting Plaintiff to the BDO position.

22.

In November 2015, PNC raised the minimum annual salary for the BDO position from $47,500 per year to $52,000 per year. However, PNC would not raise Plaintiff's salary to the new BDO minimum annual salary until February 2018.

23.

Plaintiff's supervisor, Manager Jones, claimed that Plaintiff's performance was why her pay was not increased to the new minimum salary under PNC's pay scale for the BDO position.

24.

However, Plaintiff spent the majority of her time as a BDO without a WorkPlace Banking FSC (hereinafter "Banker") counterpart.

25.

PNC assigns Bankers to all BDOs, and they work together to generate new leads and open new accounts in order to meet their goals.

26.

All male BDOs under Manager Jones consistently had a Banker counterpart, while Plaintiff was without a Banker counterpart from July 2016 to January 2017, January 2018 to July 2018, and again from December 2018 to January 2019.

27.

Plaintiff's amount of time without a Banker counterpart was significantly higher than the amount of time her male colleagues spent without a Banker counterpart.

28.

BDOs heavily rely on their Banker counterparts in order to meet their goals.

29.

In July 2018, Manager Jones met with Plaintiff to discuss her performance. Manager Jones did not provide feedback on her performance, did not discuss the fact that Plaintiff did not have a Banker counterpart for the past seven

months, and stated that he was having trouble figuring out why she was unable to meet her goals.

30.

Manager Jones stated that while it was an uncomfortable conversation, he felt that she was not having success because of how she dressed.

31.

PNC policies limit supervisors' discussions with the employees to providing the PNC dress code and notify you of what you are wearing and where it states it does not meet the dress code requirements.

32.

However, Manager Jones did not provide how Plaintiff's dress did not meet the dress code requirements.

33.

Manager Jones asked if Plaintiff still had a part-time position at Kohl's and if she could use her employee discount to buy new clothes there. He also texted her an article titled "How Your Professional Appearance Affects Productivity and Confidence." See Exhibit E, "How Your Professional Appearance Affects Productivity and Confidence," Partners Vantage Blog (January 25, 2017).

34.

Plaintiff reported this incident to Employee Relations and stated that the conversation made her uncomfortable.

35.

To the best of Plaintiff's knowledge, Employee Relations took no action.

36.

Plaintiff spoke to Manager Jones, stated that she found the article offensive, and asked if anything she wore was outside of the PNC dress code.

37.

Manager Jones responded that the elevated dress style of some members of the team was a reason for why they were so successful.

38.

However, the male employee that Manager Jones held as an example would wear a PNC polo shirt with dress pants and did not have an elevated style of dress.

39.

To the best of Plaintiff's knowledge, Manager Jones has not spoken to any male employee about having an "elevated style of dress."

40.

In August 2018, Manager Jones issued Plaintiff a written warning based on her poor performance.

41.

Soon thereafter, an unknown person began sending text messages to Plaintiff. The text messages stated that Plaintiff would soon be a PNC customer and that certain positions are not meant for everyone. See Exhibit F, Text messages from an unknown person.

42.

Plaintiff reported this incident to PNC.

43.

However, PNC was unable to find the person responsible for the text messages, nor were they able to discover how this person was aware of Plaintiff's written warning.

44.

This person would continue to harass Plaintiff via text message until her removal. See Exhibit F, Text messages from an unknown person.

45.

On April 30, 2019, Manager Jones met with Plaintiff to officially place her on probation. The documents signed by Plaintiff provided that the probation

period would end on July 28, 2019. However, Manager Jones would remove Plaintiff from her position well before the end of her probationary period.

46.

On May 15, 2019, Plaintiff's then Banker counterpart, Mrs. Tawny Garcia-Nguyen, contacted Manager Jones's supervisor, East Territory Manager for WorkPlace Banking Anita Thomasian.

47.

Mrs. Garcia-Nguyen wanted to speak to Ms. Thomasian about the moral issues the team was having under Manager Jones. Ms. Thomasian responded by stating that Mrs. Garcia-Nguyen sounded "like a crybaby like Christina," that she needed to "put her big girl panties on," and "choose better friends."

48.

One week after this phone call, on May 21, 2019, Ms. Thomasian and Manager Jones met with Ms. Thomasian's supervisor in Cleveland, Ohio.

49.

On May 23, 2019, Manager Jones returned from this meeting and informed Plaintiff that PNC would be moving forward with her termination.

50.

PNC terminated Plaintiff's employment less than one month after her probationary started and two months before her probationary period was supposed to end.

51.

Plaintiff has been treated differently from similarly situated employees by PNC in her employment terms and conditions because of her gender.

52.

PNC have engaged in illegal discrimination against the Plaintiff because of her gender.

## CAUSES OF ACTION

### I.

### Title VII - Gender

53.

Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54.

PNC have engaged in gender discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

55.

PNC's conduct violates Title VII.

56.

On or about July 11, 2019, Plaintiff filed a timely Charge of Discrimination alleging gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC marked the Charge of Discrimination as received on November 12, 2019.  See Exhibit A, Copy of EEOC Charge of Discrimination # 410-2020-01356.

57.

On December 1, 2020, Plaintiff received her Dismissal and Notice Of Rights letter from the EEOC for her EEOC Charge of Discrimination # 410-2020-01356.  See Exhibit B, Copy of December 1, 2020 email and Dismissal and Notice of Rights for EEOC Charge of Discrimination # 410-2020-01356.

58.

Plaintiff has satisfied all statutory prerequisites for filing this action.

59.

Plaintiff has filed this action under Title VII within ninety (90) days after receipt of her "Notice Of Right to Sue" letter from the EEOC.

60.

PNC's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

61.

PNC's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

62.

PNC engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## II.

## Title VII – Retaliation

63.

Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

64.

Plaintiff engaged in protected EEO activity when she contacted Employee Relations and her supervisor to report that the meeting about her style of dress and the online article regarding how to dress was offensive and that she was subjected to this conduct due to her gender.

65.

PNC engaged in EEO retaliation in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

66.

PNC's conduct violates Title VII.

67.

On or about July 11, 2019, the Plaintiff filed a timely Charge of Discrimination alleging gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC marked the Charge of Discrimination as received on November 12, 2019.  See Exhibit A, Copy of EEOC Charge of Discrimination # 410-2020-01356.

68.

On December 1, 2020, Plaintiff received her Dismissal and Notice Of Rights letter from the EEOC for her EEOC Charge of Discrimination # 410-2020-01356.  See Exhibit B, Copy of December 1, 2020 email and Dismissal and Notice of Rights for EEOC Charge of Discrimination # 410-2020-01356.

69.

Plaintiff has satisfied all statutory prerequisites for filing this action.

70.

Plaintiff has filed this action under Title VII within ninety (90) days after receipt of her "Notice Of Right to Sue" letter from the EEOC.

71.

PNC's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

72.

PNC's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

73.

PNC engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## PRAYER FOR RELIEF

WHEREFORE, and in light of the foregoing, Plaintiff prays that the Court

1. That the Court order PNC to reinstate Plaintiff's employment;
2. That the Court grant full front pay to the Plaintiff;
3. That the Court grant full back pay to the Plaintiff;

4. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by PNC's conduct;

5. That the Court grant Plaintiff punitive damages for PNC's malicious and recklessly indifferent conduct;

6. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

7. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988; 8. That the Court grant Plaintiff a jury trial;

8. That the Court grant Plaintiff all other relief the Court deems just and proper; and

9. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting PNC from engaging in further discriminatory conduct.

Respectfully submitted on  March 1, 2021

John Durishan
Attorney Bar Number GA165070
Attorney for Plaintiff, Christina Parker
Lucy Lu & Associates
1999 S Bascom Ave #250

Campbell, CA 95008
Tel:404-343-7166
Fax: 404-920-8598
Email: info@lucylulaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORIGA

| | |
|---|---|
| **Christina Parker**, ) | |
| Sugar Hill, Georgia ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No: |
| ) | |
| **PNC FINANCIAL SERVICES** ) | **JURY TRIAL DEMAND** |
| **GROUP, INC.;** ) | |
| ) | |
| Defendant ) | |

## LIST OF EXHIBITS

Exhibit A.  Copy of EEOC Charge of Discrimination # 410-2020-01356.

Exhibit B.  Copy of December 1, 2020 email and Dismissal and Notice of Rights for EEOC Charge of Discrimination # 410-2020-01356.

Exhibit C.  Copy State of Georgia Department of Labor Separation Notice

Exhibit D.  Memorandum re: promoting Plaintiff to the BDO position.

Exhibit E.  "How Your Professional Appearance Affects Productivity and Confidence," Partners Vantage Blog (January 25, 2017).

Exhibit F.  Text messages from an unknown person.